# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-1925V
UNPUBLISHED

| | |
|---|---|
| KATHLYN HAYNES,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: October 13, 2021<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Site of Vaccination;<br>Influenza (Flu) Vaccine; Shoulder<br>Injury Related to Vaccine<br>Administration (SIRVA) |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Debra A. Filteau Begley, U.S. Department of Justice, Washington, DC, for Respondent.*

## FINDINGS OF FACT[1]

On December 17, 2018, Kathlyn Haynes filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine received in her right shoulder on October 6, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find the flu vaccine alleged as causal was more likely than not administered in Petitioner's right shoulder, as Petitioner has alleged.

## I. Relevant Procedural History

As noted, the matter was initiated in December 2018. On May 6, 2020, Respondent filed a status report indicating that although Petitioner alleged a right shoulder SIRVA from the flu vaccine administered on October 6, 2017, the records were unclear as to the site of vaccination. ECF No. 25. (*citing* Ex. 7 at 12; Ex. 1 at 8).

In a scheduling order filed on May 28, 2020, I expressed the view that a hearing would not be necessary, and that I intended to issue a fact ruling as to the site of vaccine administration after providing the parties with an opportunity to file briefs and any evidence they wish to have considered. ECF No. 26. On June 29, 2020, Respondent filed a motion for a finding of fact. ECF No. 27. On August 5, 2020, Petitioner filed a response brief. ECF No. 29. The matter is now ripe for adjudication.

## II. Issue

At issue is whether Petitioner received the vaccination alleged as causal in her right arm. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination).

## III. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie,* the special master wrote that "written records which

are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.   Finding of Fact

Based upon a review of the entire record, I find that the flu vaccine Petitioner received on October 6, 2017, was likely administered in her right arm, as she contends. Specifically, I base my finding on the following evidence:

- Petitioner has a documented medical history of left shoulder pain. Ex. 2 at 31-33; 134-38, 223-31; 257-59. The medical records indicate that Petitioner first sought treatment for this issue on October 16, 2016. *Id.* at 257-59.

3

- Petitioner received the flu vaccine alleged as causal on October 6, 2017. Ex. 1 at 1-2. It was administered by a Rite-Aid technician at her place of employment. Ex. 3 at 1.

- The vaccination record does not denote the site of vaccine administration. Ex. 1 at 1-2.

- In a July 16, 2018 email, a Rite Aid representative acknowledged that the site of Petitioner's October 6, 2017 flu shot had not been noted on the record of vaccine administration. Ex. 7 at 12. He further stated that "the data entered into the system while processing the script is for the Left Arm." *Id*. In her emailed response, however, sent on July 17, 2018, Petitioner stated that "while the [administering] tech asked if I wanted the shot in my left arm, I requested that it be administered in my right arm." *Id.* at 11.

- In her affidavit, Petitioner avers that she asked the Rite-Aid technician to inject the vaccine into her right arm "because I had strained some ligaments in the left shoulder about a year earlier and didn't want to risk re-injury." Ex. 4 at 1.

- On October 19, 2017 (13 days post-vaccination), Petitioner presented to Dr. Soma Tharakan with a chief complaint of right shoulder pain that "started on October 6 when she got a [f]lu shot." Ex. 2 at 111-12. Following an examination, Petitioner was diagnosed with pain in the right shoulder and underwent a right shoulder x-ray. *Id.* at 112-13.

- Petitioner underwent an MRI of her right shoulder on November 20, 2017. Ex. 2 at 30-31. It revealed "[m]yotendinous strain and intermediate to high-grade interstitial tear of the right infraspinatus tendon." *Id.* at 31.

- Petitioner presented to Dr. Robert Tracey, an orthopedist, on November 30, 2017 for "R[ight] shoulder pain starting after the flu vaccine on 6OCT17." Ex. 2 at 96. Dr. Tracey rendered a provisional diagnosis of "[s]train of muscle(s) and tendon(s) of the rotator cuff of [the] right shoulder" and opined that the "flu vaccine likely infiltrated SA [subacromial] space." *Id.* at 99.

- Petitioner presented for an initial physical therapy evaluation of her right shoulder on December 12, 2017. Ex. 2 at 89-94. The record documenting this appointment indicates that the onset of Petitioner's symptoms began after her receipt of the flu shot in her right deltoid. *Id.* at 90.

4

- The treatment notes documenting Petitioner's January 18, February 15, and March 15, 2018 appointments indicate that she presented for "follow up related to R[ight] shoulder pain s/p flu vaccine." Ex. 2 at 40, 59, 76. On March 15, 2018, it was noted that Petitioner's "objective exam [was] consistent with R[ight] shoulder weakness and R/C [rotator cuff] tear, likely still aggravated post injection for immunization." *Id.* at 42.

- Petitioner presented for her final physical therapy appointment on April 16, 2018. Ex. 2 at 263. She reported that her pain had improved, but noted experiencing "aggravation in the mornings after doing her exercises or sleeping on the right side." *Id.*

The above-referenced evidence supports a finding that the vaccine at issue was likely administered in Petitioner's right shoulder. In the context of seeking care, Petitioner consistently reported that the vaccine had been administered in her right arm, and that her injury was associated with the vaccination. Accordingly, there is some record support for her contention about the situs of administration beyond witness statements. The record of Petitioner's October 19, 2017 visit to Dr. Tharakan for right shoulder pain, which "started on October 6 when she got a [f]lu shot" is particularly persuasive. This record is from only 13 days after vaccination, and is the most contemporaneous record other than the vaccine administration record itself.

In addition, Petitioner has provided a logical explanation for why she would have specifically requested that the vaccine be administered in her right arm. In her affidavit, Petitioner asserts that she asked the technician to inject the vaccine into her right arm because of a previous injury to her left shoulder. Ex. 4 at 1. And the medical records show that Petitioner had a history of left shoulder pain that began approximately one year before her flu shot. *See* Ex. 2 at 31-33; 134-38, 223-31; 257-29.

I acknowledge that the vaccine record *itself* does not set forth the site of vaccination. Ex. 1 at 2. I also recognize Rite Aid's statement that data entered into its system indicates that the vaccine was injected into Petitioner's left arm. Ex. 7 at 12. However, this statement is not supported by any documentary evidence corroborating the contention, and there is no information concerning the identity of the person who entered this information and the date on which it was done. By contrast, all other medical records filed in this case and bearing on Petitioner's post-vaccination treatment support a finding that the vaccine was administered in Petitioner's right arm, and Petitioner's statements amplify reasons to find this to be the case. *See, e.g. Parker v. HHS*, No. 15-1331V, 2016 WL 3443929 (Fed. Cl. Spec. Mstr. May 13, 2016)(finding that a vaccine record recording

5

administration in the left arm was incorrect based primarily on petitioner's consistent attribution of his right shoulder condition to his vaccination throughout his treatment).

Accordingly, preponderant evidence establishes that the vaccination alleged as causal in this case was more likely than not administered to Petitioner in the right arm/shoulder on October 6, 2017.

### V.     Scheduling Order

Given my finding of fact regarding the site of vaccine administration, Respondent should evaluate and provide his current position regarding the merits of Petitioner's case.

**Respondent shall file, by no later than <u>Friday, November 12, 2021</u>,** a status report concerning how he intends to proceed, or his unfiled Rule 4(c) report.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master